The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.



Russ Kendig
United States Bankruptcy Judge

**Dated: 11:22 PM August 5, 2021**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| JENNIFER ELLEN LEWIS, | ) | CASE NO. 16-61478 |
| | ) | |
| Debtor. | ) | ADV. NO. 19-6059 |
| _____ | ) | |
| JENNIFER ELLEN LEWIS, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| JOHNSON & WALES | ) | **(NOT FOR PUBLICATION)** |
| UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 27, 2021, Plaintiff moved to seal exhibits supporting her summary judgment opposition. The court issued an order on May 24, 2021 requiring legal support for sealing the exhibits. Plaintiff provided a memorandum of June 16, 2021.

The court has jurisdiction of this proceeding under 28 U.S.C. § 1334(b) and the general order of reference entered by the United States District Court on April 4, 2012. This is a

1

statutorily core proceeding under 28 U.S.C. § 157(b)(2)(I) and the parties have consented to final entries by this court. Pursuant to 11 U.S.C. § 1409, venue in this court is proper.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## **DISCUSSION**

In her original motion to file her exhibits under seal, Plaintiff claimed the exhibits contained medical information that should not be "publicly accessible." She now argues the information is "highly sensitive private information" that is classified as "protected health information" under HIPAA, The Health Insurance Portability and Accountability Act. Pub.L. No. 104-191, 110 Stat.1936. She refuses to waive any constitutional right of privacy in the protected information for she and her son, in partial fear of it impacting any future job search. She seeks seal two exhibits and a portion of her affidavit containing this information.

As stated in its previous order, the Bankruptcy Code promotes public access to bankruptcy documents. 11 U.S.C. § 107. Under section 107, documents filed in a bankruptcy case are "public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). This supports the "long-established legal tradition [of] the presumptive right of the public to inspect and copy judicial documents and files." In re The Knoxville News-Sentinel Co., Inc., 723 F.2d 470, 474 (6th Cir. 1983) (citations omitted). Consequently, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." Id. at 476 (citations omitted). "The party seeking to seal records has the heavy burden of overcoming the 'strong presumption in favor of openness.'" Kondash v. Kia Motors America, Inc., 767 Fed.Appx 635, 637 (6th Cir. 2019) (citing Shane Grp., Inc. v. Blue Cross Blue Shield, 825 F.3d 299, 305 (6th Cir. 2016) (other citation omitted)). Perfunctory explanations are insufficient to meet the high burden required to seal documents. Shane Grp., 825 F.3d 299, 306.

One benefit of allowing access to court documents is that it allows the public to examine the foundation for a court's decision. The Sixth Circuit explained:

> "At the adjudication stage, however, very different considerations apply." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record. Baxter, 297 F.3d at 545. Unlike information merely exchanged between the parties, "[t]he public has a strong interest in obtaining the information contained in the court record." Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1180 (6th Cir. 1983). That interest rests on several grounds. Sometimes, the public's interest is focused primarily upon the litigation's result—whether a right does or does not exist, or a statute is or is not constitutional. In other cases—including "antitrust" cases, id. at 1179—the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, "secrecy insulates the participants, masking impropriety,

2

obscuring incompetence, and concealing corruption." Id. And in any of these cases, the public is entitled to assess for itself the merits of judicial decisions. Thus, "[t]he public has an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions." Id. at 1181; see also, e.g., Baxter, 297 F.3d at 546.

Shane Grp., Inc., 825 F.3d at 305. The District Court for the Western District of Michigan identified the public's right in this regard as a "constitutionally-based right" that warranted routine denial of motions to seal summary judgment exhibits, including those containing medical information. Kitchen v. Corizon Health Inc., 2017 WL 5099892, *3 (W.D. Mich. 2017) (citing McCallum v. Corizon, Inc., No. 1:15-cv-700 (W.D. Mich. Sept. 21, 2016) (Order denying Corizon's motion to seal summary judgment exhibit); Simmons v. Rogers, No. 1:14-cv-1242 (W.D. Mich. March 21, 2016) (same)).

It is not uncommon for a debtor's medical history or conditions to factor heavily into a student loan dischargeability action. Educ. Credit Mgmt. Corp. v. Barrett (In re Barrett), 337 B.R. 896 (B.A.P. 6th Cir. 2006); Hutsell v. Navient (In re Hutsell), 620 B.R. 604 (Bankr. N.D. Ohio 2020); James v. ACS (In re James), 2017 WL 1240217 (Bankr. N.D. Ohio 2017). Understanding how the court utilizes medical conditions and history to assess dischargeability is helpful to other debtors and creditors. The public has an interest in understanding the court's use of this information in reaching its decision. Consequently, Plaintiff bears a very heavy burden to overcome the public's right to access.

### I. **HIPAA**

Debtor's reliance on HIPAA as authority for sealing her medical information is unsound. Although the medical records may constitute "protected health information" under the Act, the entity seeking to use or disclose the information is not regulated by the Act, nor does the Act require the protective measures sought.

In 1996, Congress enacted HIPAA, identified as

> An act to amend the Internal Revenue Code of 1986 to improve portability and continuity of health insurance coverage in the group and individual markets, to combat waste, fraud, and abuse in health insurance and health care delivery, to promote the use of medical savings accounts, to improve access to long-term care services and coverage, to simplify the administration of health insurance, and for other purposes.

Id. Counter to the understanding of many, the "P" does not stand for "Privacy" and the Act was not created for that purpose.

The genesis for HIPAA's health information rights is found in Subtitle F of Title II of the Act, titled "Administrative Simplification." The Fourth Circuit opined that this portion of the Act

3

was "designed to improve the efficiency and effectiveness of the health care system by facilitating the exchange of information with respect to financial and administrative transactions carried out by health plans, health care clearinghouses, and health care providers who transmit information in connection with such transactions." South Carolina Med. Ass'n v. HHS, 327 F.3d 346, 348 (4th Cir. 2014); 110 Pub.L 104-191, 110 Stat. 2021, 42 U.S.C. 1320(d) *et seq.* As the processing of insurance claims and the health system in general became more automated, legislators sought to protect the information exchanged between entities. This is the privacy portion of HIPAA.

Section 264 required the Department of Health and Human Services ("HHS"), within a year of enactment of HIPAA, to provide certain congressional committees with "detailed recommendations on standards with respect to the privacy of individually identifiable health information." Section 264(b) identified three specific subjects for HHS recommendation:

> (1) The rights that an individual who is a subject of individually identifiable health information should have.
> (2) The procedures that should be established for the exercise of such rights.
> (3) The uses and disclosures of such information that should be authorized or required.

As a result of this directive, HHS promulgated final regulations, commonly referred to the "Privacy Rule.". These regulations are now codified in the Code of Federal Regulation at 45 C.F.R. § 164.502.

The Privacy Rule regulates "use and disclos[ure] of protected health information" by covered entities and business associates. 45 C.F.R. § 164.502(a). Covered entities and business associates are defined at 45 C.F.R. §§ 160.103 and 160.104 respectively and include: health plans; health care clearinghouses; health care providers who transmit any health information in electronic form in connection with a transaction covered by this subchapter; a Health Information Organization, E-prescribing Gateway, or other person that provides data transmission services with respect to protected health information to a covered entity and that requires access on a routine basis to such protected health information; a person that offers a personal health record to one or more individuals on behalf of a covered entity; and a subcontractor that creates, receives, maintains, or transmits protected health information on behalf of the business associate.

Debtor is seeking to protect her own personal health information and the health information of her minor son. No one is seeking use or disclosure of protected health information from an entity covered by the Privacy Rule. As a result, the Privacy Rule does limit use or disclosure of the information.

Moreover, there is an exception in the Privacy Rule for judicial and administrative proceedings. 45 C.F.R. § 160.512(e)(1). Contrary to Debtor's suggestion, the Privacy Rule does not require a qualified protective order. When the information sought is authorized by order, disclosure is permitted but limited to the specific information detailed in the order. 45 C.F.R. §

160.512(e)(1)(i). If the request is made without a court order, the regulation establishes "assurance" procedures before disclosure. Under these procedures, the entity holding the information is entitled to assurance that the "owner" of the information has received adequate notice of the requested disclosure, with opportunity to object, 45 C.F.R. § 160.512(e)(1)(ii)(A), or that attempts were made to obtain a qualified protective order. 45 C.F.R. § 160.512(e)(1)(ii)(B). The regulation details that a qualified protective order

> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 160.512(e)(1)(v). HIPAA does not require a protective order and the contents of a qualified protective order are less restrictive than Debtor propounds. Debtor's contention that HIPAA supports her request to seal the medical information is simply not well-taken.

## II. 11 U.S.C. § 107(b)(2)

Debtor also claims section 107(b)(2) supports filing exhibits containing medical information under seal. Debtor cites 11 U.S.C. § 107(b)(2), an exception to the general rule that bankruptcy filings are public documents, which provides "on request of a party in interest, the bankruptcy court shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." Debtor does not discuss how the health information qualifies as "scandalous or defamatory matter" although she does mention the possibility it could have negative impact on a future job search.

Neither "scandalous" or "defamatory" is defined, leaving courts to develop definitions, which has proved challenging. For example, the First Circuit concluded "material that would cause a reasonable person to alter his opinion of an interested party triggers the protections of § 107(b)(2) based on a showing that either (1) the material is untrue, or (2) the material is potentially untrue and irrelevant or included within a bankruptcy filing for an improper end." Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.), 422 F.3d 1, 14 (1st Cir. 2005). The Ninth Circuit rejected this definition, broadly determining a "matter is 'scandalous' if it disgraceful, offensive, shameful and the like." Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Oregon), 661 F.3d 417, 432 (9th Cir. 2011). The Sixth Circuit has not defined either term. However, this court is persuaded to adopt Gitto Global Corp. based on the reasoning set forth in City of Detroit, 2014 WL 8396419, *6 (Bankr. E.D. Mich. 2014):

> Under Roman Catholic Archbishop of Portland in Oregon, determining whether matter is scandalous does not involve examining its relevance. The difficulty with this view is that many papers and pleadings in bank- ruptcy allege conduct that is arguably disgraceful, offensive or shameful—

> fraud, bad faith, willful and malicious injury, to name only a few—but which courts would not consider striking because those allegations are relevant to the legal claims that must be resolved. As the First Circuit observed in Gitto Global, "Many, if not the vast majority, of these papers will include material that is likely to affect an individual's reputation in the community." 422 F.3d at 8–9.

A bankruptcy filing itself can affect an individual's reputation in the community or could be considered shameful. *See generally* In re Creighton, 490 B.R. 240 (Bankr. N.D. Ohio 2013) (discussing Debtor's attempt to redact her name from her joint bankruptcy case because of community reaction). This demonstrates the unworkability of the Roman Catholic Archbishop definition.

Applying Gitto Global Corp., the court finds that the material Debtor seeks to seal is neither scandalous nor defamatory. There is no suggestion that the medical records for Debtor and her son are untrue, nor that they are being used for an improper purpose. Debtor herself seeks to submit them in defense of her student loan dischargeability claim. The court therefore rejects Debtor's argument for sealing the records under 11 U.S.C. § 107(b)(2).

### III. Bankruptcy Rule 9037

Debtor also mentions Bankruptcy Rule 9037 in support of sealing the exhibits containing medical information. Debtor's citation to this Rule is misplaced. Although Rule 9037(c) states "a court may order that a filing be made under seal without redaction," it must be viewed in context of the entire rule. Rule 9037 was adopted in response to the E-Government Act of 2002, Pub.L. 107-347. Under Section 205(c)(1), courts are required to make documents filed electronically available online and required to protect the security and privacy of information in those documents per section 205(c)(3). Rule 9037 safeguards "personal data identifiers" such as social security numbers, financial account numbers, minors' names, and similar information by allowing redaction or truncation of the information. Under Rule 9037(c), the court has the option to seal a document with this information rather than redact it. The Rule is not applicable to sealing exhibits containing medical information related to a summary judgment motion.

### IV. Personal privacy rights

In her brief, Plaintiff states she "does not want her medical records to be released to the public nor of her son and will not waive that constitutional right of privacy." (Pl.'s Brief, pp. 1-2, ECF No. 95.) She provides no legal authority or argument, thereby failing to meet her burden of proof that her proclaimed privacy interest outweighs public access to the information.

Regardless, Plaintiff put her medical condition and that of her son at issue, thereby opening the door to disclosure and use of that information. Mikko v. Smock, 2012 WL 8963809, *2, (E.D. Mich. 2012) (other citation omitted). As a result, she also has a diminished expectation of privacy and entitlement to any rights or privileges in the medical information. White v. Gilless, 1995 WL 39524, *2 (6th Cir. 1995) (unpublished) (citing Tanks v. Greater Cleveland

6

Regional Transp. Auth., 930 F.2d 475, 480 (6th Cir.1991)); Lockhart v. Marietta City Schools, 2020 WL 5887005, *1-2 (S.D. Ohio 2020); Tyson v. Regency Nursing, LLC, 2018 WL 632063, at *1 (W.D. Ky. Jan. 30, 2018). Thus, the court cannot find a basis to seal the exhibits on the basis of Plaintiff's undefined constitutional right of privacy.

## CONCLUSION

Public access to court records is a banner of the American judicial system. One benefit is that openness allows the citizenry to review and understand how a court reaches a determination based on the evidence before it. Restricting this right places a heavy burden on Plaintiff to demonstrate her right to protect information outweighs the public's right to access information. Plaintiff did not meet her burden.

HIPAA does not offer the privacy protections claimed by Plaintiff. And, even if the Act covered the medical information at issue, there are exceptions to the protection for judicial and administrative proceedings supporting release of the information. Additionally, the Bankruptcy Code generally mandates that bankruptcy filings be made public. Plaintiff failed to convince the court that the information she seeks to protect is defamatory or scandalous or protected by Bankruptcy Rule 9037. Since Plaintiff put her medical condition at issue, her ability to protect that information is lessened.

An order denying the motion to seal exhibits will be denied by a separate order to issue immediately.

#   #   #


**Service List:**

Nicole L. Rohr-Metzger
Thrush & Rohr LLC
4930 Hills & Dales Rd NW
Canton, OH 44708

Rema A. Ina
Assistant United States Attorney
United States Courthouse
801 West Superior Ave., Suite 400
Cleveland, Ohio 44113

Milos Gvozdenovic, Esq.
Weltman, Weinberg & Reis Co., L.P.A.
965 Keynote Circle
Brooklyn Heights, OH 44131