**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO (CANTON)**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Jennifer Ellen Lewis ) | Case No. 16-61478-rk |
| ) | Chapter 13 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | Judge Russ Kendig |
| Jenifer Ellen Lewis ) | |
| ) | |
| Plaintiff, ) | Adversary Proceeding |
| ) | Case No. 19-06059-rk |
| vs. ) | |
| ) | |
| Johnson & Wales University, et. al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DEFENDANTS NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2 AND NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4'S AMENDED MOTION FOR SUMMARY JUDGMENT

Now comes the Defendants, National Collegiate Student Loan Trust 2007-2 and National Collegiate Student Loan Trust 2006-4 (collectively referred to herein as "NCSLT"), by and through its attorneys, Weltman, Weinberg & Reis, Co. L.P.A., pursuant to Federal Rule of Civil Procedure 56(a), applicable to this case pursuant to Federal Rule of Bankruptcy Procedure 7056, and hereby move the Court for summary judgment.

The grounds in support of this motion are set forth in the attached memorandum in support.

1

**MEMORANDUM IN SUPPORT**

**A.  ISSUE PRESENTED**

Plaintiff entered into two (2) student loans, one loan with Bank of America, N.A. (hereinafter "Bank of America") and one loan with JPMorgan Chase Bank, N.A. (hereinafter "JPMorgan") to attend Johnson & Wales University.  Plaintiff filed an adversary complaint seeking to discharge the loans now held by National Collegiate Student Loan Trust 2007-2 and National Collegiate Student Loan Trust 2006-4 (collectively referred to herein as "NCSLT"). Plaintiff alleges that the loans are dischargeable because they are not excepted from discharge under 11 U.S.C. § 523(a)(8).[1] Plaintiff alleges that the loans are not qualified educational loans and that repaying the loans will cause an undue hardship.

NCSLT answered the complaint with an affirmative defense that the loans are non-dischargeable under § 523(a)(8) because they were made under a loan program that was funded by a non-profit institution and Debtor is unable to meet her burden of proof for undue hardship.

**B.  STATEMENT OF MATERIAL FACTS**

**Loan #0001 owned by National Collegiate Student Loan Trust 2006-4**

1.      On or about August 20, 2006, Plaintiff entered into a Non-Negotiable Credit Agreement ("Loan #0001") and a Note Disclosure Statement with Bank of America, N.A. to attend Johnson & Wales University (the "School") for the academic period of September 2006 through May 2007 in the original amount of $32,085.56, with regards to National Collegiate Student Loan Trust 2006-4 loan ending in #0001. *See* Affidavit of Bradley Luke ("Declaration") ¶ 10 & 11 and Exhibits A and B.

---

[1] All statutory references will be to Title 11 U.S.C. unless otherwise noted.

2

2.　　Loan #0001 was made under the Education Maximizer Undergraduate Loan Program (the "Program"). *See* Declaration ¶ 15 and 21 and Exhibit B at Page 1.

3.　　Loan #0001 is an educational loan. *See* Declaration ¶ 14 and 17 and Exhibit B at Page 1 and Page 5, ¶ L.12.

4.　　TERI guaranteed the loan in Plaintiff's loan Program, Education Maximizer Undergraduate Loan Program. *See* Declaration ¶ 19 and Exhibit C.

5.　　TERI guaranteed that it would reimburse the holder of any Program loan upon default. *See* Declaration ¶ 22 and Exhibit C at Sections 1.6 and 2.1.

6.　TERI is a non-profit institution. *See* Declaration ¶ 49 through 69 and Exhibits L, M, N, O, & P.

7.　　The loan package given to Plaintiff included Terms and Conditions of Loan #0001. *See* Exhibit B at Page 2.

8.　　On the signature page of Loan #0001, the Plaintiff agrees that "By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all seven (7) pages of this Loan Request/Credit Agreement." *See* Exhibit B at page 2.

9.　　The Plaintiff signed Loan #0001. *See* Exhibit B at page 2.

10.　　Plaintiff agreed that "**I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code.**

3

**This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full**." *See* Declaration ¶ 17 and Exhibit B at page 5, ¶ L.12. (Text is bolded in Loan Agreement).

11. The effective date of the Guaranty was June 30, 2003. *See* Declaration ¶ 20 and Exhibit C at ¶ 1.

12. TERI's Guaranty of the Education Maximizer Undergraduate Loan Program remained in full force and effect after the merger because the Guaranty is to loans made under the Education One Loan Program, not to those made by Bank of America, N.A. *See* Declaration ¶ 24 and 25, and Exhibits D and E.

13. TERI and Bank of America, N.A. approved the schools participating in the Loan Program. *See* Exhibit C.

14. TERI was paid a Guaranty Fee for the individual student loans in the Loan Program, including Plaintiff's Loan. *See* Declaration ¶ 23 and Exhibits A, B, and C at Schedule 3.3.

15. On or about December 7, 2006, after Plaintiff entered into Loan #0001, but prior to Plaintiff's last payment on Loan #0001, Bank of America, N.A., The First Marblehead Corporation ("FMC") and National Collegiate Funding LLC ("NCF") entered into the 2006-4 Pool Supplement (DTC ONLY) Bank of America, N.A. wherein Bank of America, N.A. sold certain student loans to NCF along with its rights under the Guaranty Agreement with TERI. TERI's guaranty was assigned to NCF. *See* Declaration ¶ 24 and Exhibit D at Page 1, Article 1 *and* Page 2, Article 5.

16. On or about December 7, 2006, after Plaintiff entered into Loan #0001, but prior to Plaintiff's last payment on Loan #0001, NCF and National Collegiate Student Loan Trust

4

2006-4 entered into the "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2006-4", wherein NCF sold the loans to National Collegiate Student Loan Trust 2006-4, and transferred all of its rights and interests under the Pool Agreement to National Collegiate Student Loan Trust 2006-4, including Plaintiff's loan. The transfer of rights and interests included NCF's rights under the Guaranty Agreement with TERI.  See Declaration ¶ 25 and Exhibit E at Section 3.02.  The sale included all loans in Plaintiff's Loan Program, the Education One Loan Program. *See* Declaration ¶ 25 and Exhibit E at Schedule A.

17.     Loan #0001 has not since been transferred or sold, and all right, title and interest remains with National Collegiate Student Loan Trust 2006-4.  *See* Declaration ¶ 26.

18.     Plaintiff owes NCSLT $59,335.89, as of August 21, 2020.   Plaintiff's last payment was on June 13, 2016.  *See* Declaration ¶ 27.

**Loan #0002 owned by National Collegiate Student Loan Trust 2007-2**

19.     On or about May 2, 2007 Plaintiff entered into a Non-Negotiable Credit Agreement ("Loan #0002") and Note Disclosure Statement with JPMorgan Chase Bank, N.A. ("JPMorgan") to attend Johnson & Wales University (the "School") for the academic period of May 2007 through May 2008 in the original amount of $32,085.56, with regards to National Collegiate Student Loan Trust 2007-2 loan ending in #0002.   *See* Affidavit of Bradley Luke ("Declaration") ¶ 28 & 29 and Exhibits F and G.

20.     Loan #0002 was made under the Education One © Education One Undergraduate Loan Program (the "Program").   *See* Declaration ¶ 33 and 42, and Exhibit G.

21.     Loan #0002 is an educational loan. *See* Declaration ¶ 32 and 35, and Exhibit G.

22.     TERI guaranteed the loan in Plaintiff's loan Program, Education One © Education One Undergraduate Loan Program.  *See* Declaration ¶ 37 and Exhibit H.

5

23.     TERI guaranteed that it would reimburse the holder of any Program loan upon default.  *See* Declaration ¶ 43 and Exhibit H at Sections 1.6 and 2.1.

24.     TERI is a non-profit institution.  See Declaration ¶ 49 through 69 and Exhibits L, M, N, O, & P.

25.     The loan package given to Plaintiff included Terms and Conditions of Loan #0002.  *See* Exhibit G at Page 1.

26.     On the signature page of Loan #0002, the Plaintiff agrees that "By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement."  *See* Exhibit G at page 1.

27.     The Plaintiff signed Loan #0002. *See* Exhibit G at page 1.

28.     Plaintiff agreed that "**I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School.  I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply:  (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code.  This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full**."  *See* Declaration ¶ 35 and Exhibit G at Pages 3 & 4, ¶ L.12.  (Text is bolded in Loan Agreement).

29.     The effective date of the Guaranty was April 18, 2002.  *See* Declaration ¶ 38 and Exhibit H at Page 1.

6

30.     JPMorgan is the successor by merger to Bank One, N.A as of November 13, 2004.  *See* Declaration ¶ 39 and Exhibit I.

31.     JPMorgan continued to originate loans under the Education One© Education One Undergraduate Loan Program after the merger with Bank One, N.A. *See* Declaration ¶ 40 and Exhibit G.

32.     TERI's Guaranty of the Education One© Education One Undergraduate Loan Program remained in full force and effect after the merger because the Guaranty is to loans made under the Education One Loan Program, not to those made by Bank One, N.A.  *See* Declaration ¶ 41 and Exhibit H at Section 6.7.

33.     TERI and JPMorgan, successor by merger to Bank One, and the Program Manager approved the schools participating in the Loan Program. *See* Exhibit H, its Exhibit A.

34.     TERI was paid a Guaranty Fee for the individual student loans in the Loan Program, including Plaintiff's Loan.  *See* Declaration ¶ 44 and Exhibit F, G, and H at Section 3.3.

35.     On or about June 14, 2007, after Plaintiff entered into loan #0002, but prior to Plaintiff's last payment on Loan #0002, JPMorgan, The First Marblehead Corporation ("FMC") and National Collegiate Funding LLC ("NCF") entered into the 2007-2 Pool Supplement JP Morgan Chase Bank, N.A. wherein JPMorgan sold certain student loans to NCF along with its rights under the Guaranty Agreement with TERI.  TERI's guaranty was assigned to NCF.  *See* Declaration ¶ 45 and Exhibit J at Page 1, Article 1 *and* Pages 2-3, Article 5.

36.     On or about June 14, 2007, after Plaintiff entered into Loan #0002, but prior to Plaintiff's last payment on Loan #0002, NCF and National Collegiate Student Loan Trust 2007-2 entered into the "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2007-

2", wherein NCF sold the loans to National Collegiate Student Loan Trust 2007-2, and transferred all of its rights and interests under the Pool Agreement to National Collegiate Student Loan Trust 2007-2, including Plaintiff's loan. The transfer of rights and interests included NCF's rights under the Guaranty Agreement with TERI. *See* Exhibit G at Section 3.02. The sale included all loans in Plaintiff's Loan Program, the Education One Loan Program. *See* Declaration ¶ 46 and Exhibit K at Section 3.02.

37. Loan #0002 has not since been transferred or sold, and all right, title and interest remains with National Collegiate Student Loan Trust 2007-2. *See* Declaration ¶ 47.

38. Plaintiff owes NCSLT $59,141.83, as of August 21, 2020. Plaintiff's last payment was on or around May 18, 2016. *See* Declaration ¶ 48.

### C. LAW AND ARGUMENT

### 1. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, applicable here pursuant to Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When a summary judgment motion is filed against a party who bears the burden of proof on an issue at trial, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party bearing the burden of proof in such a situation "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no

genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**2. Plaintiff's Loans are Non-dischargeable under § 523(a)(8)(A)(i)**

Absent a showing of undue hardship, student loans are non-dischargeable if they meet any one of three criteria for non-dischargeability. 11 U.S.C. § 523(a)(8) states as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt-- unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
>> **(A) (i)** an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>> **(ii)** an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>> **(B)** any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 USCS § 221(d)(1)], incurred by a debtor who is an individual;

Plaintiff claims that her Loans are dischargeable because they do not meet the criteria for non-dischargeability under §523(a)(8)(B). Plaintiff fails to recognize that her Loans could be non-dischargeable under §523(a)(8)(A)(i) or (ii). Defendant NCSLT will not address whether the loans are qualified educational loans pursuant to §523(a)(8)(B) as it can prove that its meets §523(a)(8)(A)(i) in a more cost effective manner.

Plaintiff's loans are non-dischargeable under § 523(a)(8)(A)(i) because they were made under a loan program guaranteed by TERI, a non-profit institution. Plaintiff alleges no facts in the Complaint and cannot allege any facts to dispute this because there are none.

Specifically, § 523(a)(8)(A)(i) states that "an educational…loan… made under any program funded in whole or in part by a… nonprofit institution" is non-dischargeable.

### 3. Plaintiff's Loans were made under a Loan Program and are Educational Loans

Plaintiff's Loans were made under a loan program and are educational loans. Plaintiff admits to taking out NCSLT Loan #0001 (originally Bank of America, N.A.) and NCSLT Loan #0002 (originally JPMorgan Chase Bank, N.A.) for the purposes of attending Johnson and Wales University. *See* Defendants National Collegiate Student Loan Trust 2007-2 and National Collegiate Student Loan Trust 2006-4's First Set of Interrogatories, Requests for Admission, and Requests for Production of Documents (hereinafter "NCSLT Interrogatories") attached as Exhibit R at Page 15, Interrogatory No. 24.

Plaintiff's Loan #0001 was made under the Education Maximizer Undergraduate Loan Program and the loan documents signed by the Plaintiff specifically indicated that Plaintiff understood and agreed that the loan was an educational loan. *See* Declaration ¶ 17 and Exhibit B at Page 5, ¶ L.12.

Plaintiff's Loan #0002 was made under the Education One © Education One Undergraduate Loan Program and the loan documents signed by the Plaintiff specifically indicated that Plaintiff understood and agreed that the loan was an educational loan. *See* Declaration ¶ 35 and Exhibit G at Pages 3 & 4, ¶ L.12.

### 4. TERI is a Nonprofit Institution

The Education Resources Institute, Inc., ("TERI") was a nonprofit institution and was never a for-profit corporation. *See* Declaration ¶ 49 through 69. It was organized as a nonprofit corporation under ALM GL Ch. 180, which is the law for nonprofit corporations in Massachusetts. *See* Declaration ¶ 53. The Secretary of the Commonwealth of Massachusetts's website describes TERI as a "Nonprofit Corporation." *See* Declaration ¶ 50. Nonprofits in Massachusetts may be formed "for any civic, educational, charitable, benevolent or religious

10

purpose[.]" ALM GL Ch. 180, § 4(a). TERI's Articles of Organization state that it was to be "operated exclusively for charitable and educational purposes." *See* Declaration ¶ 54.

The Articles of Organization prohibit TERI from participating in any activities not permitted to be carried on by tax-exempt entities under 503(c)(3) of the Internal Revenue Code or by corporations whose contributions are deductible by contributors under Section 170(c)(2) of the Internal Revenue Code. *See* Declaration ¶ 55. They further state that "No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its members, directors, officers or other private persons, except reasonable compensation for services rendered and distributions in furtherance of the purposes set forth in Article 2 hereof." *See* Declaration ¶ 56.

TERI's Articles of Organization were amended once and restated once. *See* Declaration ¶ 57 & 58. They were amended on or about September 12, 1990 only to add a limitation on the personal liability of the Officers and Directors to the corporation for breach of fiduciary duty. *See* Declaration ¶ 57 and Exhibit M. They were restated on or about November 19, 2010 to reiterate that TERI is a nonprofit corporation operating in part to assist students in attaining an education:

> The Corporation is organized and at all times shall be operated exclusively for religious, charitable, scientific, literary or educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States internal revenue law (the Internal Revenue Code of 1986, as amended, and any such future law, the "Code"), and Section 4 of Chapter 180 of the Massachusetts General Laws, as amended ("Chapter 180"), including but not limited to assisting students in attaining an education and assisting educational and financial institutions in providing an education in an economical fashion.

*See* Declaration ¶ 59 and Exhibit N at Page 4, Schedule A.

The Restated Articles also included the prohibitions on corporate conduct under I.R.C. §501(c)(3) and I.R.C. §170(c)(2), as well as the prohibition that any of the net earnings go to the benefit of any individual, which were all included in the original Articles. *See* Declaration ¶ 60–61, Exhibit N at Page 7, Schedule B, Article IV-B, and Exhibit N at Page 6, Schedule B, Article IV-B. TERI retained its nonprofit nature under both the Amended and Restated Articles of Corporation.

TERI merged with two other corporations during its corporate life, The Education Fund, Inc. and TERI Financial Services, Inc. *See* Declaration ¶ 62-68. Both of these corporations were nonprofit corporations and the mergers were done under Massachusetts' nonprofit statute, ALM GL. Ch. 180. *See* Declaration ¶ 62-68. The second merger specifically states that TERI shall remain a nonprofit corporation: "… [I]f any of the constituent corporations constitutes a public charity, then the resulting or surviving corporation shall be a public charity." *See* Declaration ¶ 68 and Exhibit P at Page 1, Paragraph 2.

The Secretary of the Commonwealth of Massachusetts' website shows that TERI retained its nonprofit status throughout its corporate life and was never a for-profit corporation. *See* Declaration ¶ 69.

Courts that examined TERI found it to be a nonprofit institution. "…TERI [is a] private nonprofit organization… engaged in providing guaranteed educational loans." *In re Hammarstrom*, 95 B.R. 160, 166 (Bankr. N.D. Cal. 1989). "The loan was guaranteed by defendant-appellee-creditor The Education Resources Institute ("TERI"), a not-for-profit corporation that conditionally guarantees loans extended by private lenders under TERI's student loan programs." *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien),* 419 F.3d 104, 105 (2d Cir. 2005). "TERI is a private nonprofit institution organized under the laws of

Massachusetts providing financial assistance to students enrolled in higher education programs throughout the United States." *Rodriguez v. Educ. Res. Inst., Inc. (In re Rodriguez)*, 319 B.R. 894, 895 (Bankr. M.D. Fla. 2005). "[T]he Guaranty Agreement between TERI and The Bank of New England (attached as Exhibit B to the Plaintiff's Brief in Support of its Motion for Summary Judgment) indicates that TERI is in fact a non-profit corporation." *In re Martin*, 119 B.R. 259, 260 (Bankr. E.D. Okla. 1990).

TERI is undeniably a nonprofit corporation under Massachusetts law, and there is no evidence it ever was anything but a nonprofit. It is, therefore, a nonprofit institution under §523(a)(8).

### 5. TERI Funded The Program Which Made Plaintiff's Loans

As set forth above, the provisions of §523(a)(8)(A)(i) are clear that a loan is exempt from discharge if it is an educational loan "made under any program funded <u>in whole or in part</u> by a governmental unit or nonprofit institution." (emphasis added). This inquiry is made at loan program level not at the individual loan level; there is no requirement that an individual loan be funded by the non-profit. *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017); *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien)*, 419 F.3d 104, 105 (2d Cir. 2005). Here, TERI, which is a nonprofit, funded the programs under which Loan #0001 and Loan #0002 were made. These were the Education Maximizer Undergraduate Loan Program and the Education One © Education One Undergraduate Loan Program. TERI did this by guaranteeing the loans in these programs.

Courts – including District and Circuit Courts – have consistently found that the "funded in whole or in part" requirement contained in §523(a)(8)(A)(i) is satisfied when a non-profit guarantees a loan program.

> There have been a number of courts which have interpreted the phrase in question, including the *Klein* court. As TERI argues persuasively, the courts that have interpreted this clause of the statute in similar circumstances as the case on appeal here have uniformly found that loans made under any program funded in whole or in part by a nonprofit institution does encompass the role that nonprofit guarantors play. For example, the *Klein* court found that even though the Bankruptcy Code does not define "funded," and that the term is not synonymous with the term "guaranteed," the plain language of the statute dictated construing the statute's funding programs language "to include guarantees like those at issue herein." *Klein*, slip op. at 13. The *Klein* court found further support in its conclusion in the legislative history of the statute. *See* id. At 13-14. *See* also *Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989) (examination of legislative history of the section, determining that the scope of the section included educational loans not directly payable to the government or nonprofits under the "any program funded in whole or in part" language.) (Referring to *Klein v. The Education Resources Institute, Inc. (In re Klein)*, Ch. 11 Case No. 92-B44249, Adv. No. 96-8828A (S.D.N.Y. April 29, 1997),

*Educ. Res. Inst. Inc. v. Taratuska (In re Taratuska)*, 2008 U.S. Dist. LEXIS 93206, 9-11 (D. Mass. Aug. 25, 2008); *see also O'Brien,* 419 F.3d, at 107 (holding that "§ 523(a)(8) includes within its meaning loans made pursuant to loan programs that are guaranteed by non-profit institutions."); *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. 1992) (holding where a nonprofit university agreed to purchase student loans from the lender bank upon default it in part funded the loan program); *Rodriguez*, 319 B.R. at 896  ("As an initial matter, the Court notes that the legislative history of the statute itself compels this Court to conclude that the types of loans and lenders covered by section 523(a)(8) is meant to be broad.").

Here there is no dispute that TERI guaranteed Plaintiff's two student loan programs. *See* Declaration ¶ 19 and 37.  The guaranties clearly state TERI's obligation to purchase or reimburse

14

defaulted loans out of Plaintiff's loan programs.  *See* Declaration ¶ 22 and 43. The Pool Supplements and Deposit and Sale Agreements then sold TERI's guaranties to NCSLT along with the two programs' student loans.  *See* Declaration ¶ 24, 25, 45, and 46.  The 6th Circuit has held that a guaranty of a loan program in itself is funding as contemplated under §523(a)(8)(A)(i).  *Andrews University v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. 1992) (nonprofit university's guarantee of a loan program constituted nonprofit institution funding the loan program).  Therefore, TERI's Guaranty of both of Plaintiff's Programs is "fund[ing] in whole or in part" of the Programs and renders loans issued under those Programs non-dischargeable under §523(a)(8)(A)(i).

And, in fact, courts have held exactly this as recently as July of 2019: the very TERI guaranty at issue here is the requisite funding "in whole or in part" contemplated by §523(a)(8)(A)(i). *See Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen)*, 602 B.R. 831 (Bankr. D. Mass. 2019). In *Greer-Allen*, the plaintiff had three loans made under the Education One Undergraduate Loan Program, which is the same loan program as NCSLT Loan #0002.  The court found that the loans were educational loans, TERI is a nonprofit organization, the loans were made under Bank One and JPMorgan's Educational One Undergraduate Loan Program, and TERI's blanket guaranty to pay the loans upon default was funding of the Loan Program as contemplated by §523(a)(8)(A)(i).  *Id.* To state it as plainly as possible: TERI's guaranteeing loans made under the same program as Plaintiff's loan held in a similar trust as Plaintiff's loan has already been determined to constitute funding under §523(a)(8)(A)(i), rendering those loans non-dischargeable.

TERI-guaranteed loans in other NCSLT trusts have also been found to be non-dischargeable.  In *Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, 559 B.R.

265 (Bankr. N.D. Ga. 2016), the Northern District of Georgia Bankruptcy Court held: "The NCSLT loans were made under a program funded in whole or in part by a non-profit institution, in this case, The Education Research Institute, Inc. Consequently, all of the loans of ECMC and NCSLT qualify to be non-dischargeable under Section 523(a)(8)(A)(i)." *Id.*, at 271.

**6. Plaintiff's Loans are Evidence they are Non-dischargeable**

This Court may also look to the Loan documents themselves for evidence that the Loans are non-dischargeable if Plaintiff agreed to non-dischargeability in the terms of the loans. In *O'Brien*, the note had a provision similar to Plaintiff's Loans #0001 and #0002 regarding non-dischargeability. "We also note that the Promissory Note for O'Brien's loan itself stated that it "evidences an educational loan made pursuant to a loan program funded in part by a nonprofit institution and is therefore subject to the limitations on dischargeability contained in Section 523(a)(8) of the United States Bankruptcy Code." *O'Brien,* 419 F.3d, at 106.

Both of Plaintiff's Loans state "I understand and agree that this loan is an education loan and certify that is will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full." See Declaration ¶ 17 and 35 *and* Exhibit B, at Page 5, ¶ L.12 and Exhibit G, at Pages 3 & 4, ¶ L.12.

TERI funded both of Plaintiff's Loan Programs in part by their Guaranty. Therefore, NCSLT's Loans are non-dischargeable under §523(a)(8)(A)(i).

**7. To Defeat Summary Judgment, the Debtor Must Present Evidence Supporting All Three Brunner Factors**

Student loans are presumptively non-dischargeable under the Bankruptcy Code, but may be discharged if "excepting such debt from discharge … will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Although the Bankruptcy Code does not define "undue hardship," the Sixth Circuit has adopted the so-called *Brunner* test, which requires the debtor to make a three-part showing: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) that the debtor has made good faith efforts to repay the loans. *In re Oyler*, 397 F.3d 382, 385 (6th Cir. 2005) (citing *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)).

A debtor seeking an undue hardship discharge bears the burden of proof by a preponderance of the evidence. *In re Chime*, 296 B.R. 439, 443 (Bankr. N.D. Ohio 2003). Because the debtor bears the burden of proof, the party opposing discharge need only prevail on any one of the three elements of the *Brunner* test to defeat the debtor's claim. *In re Miraglia*, 559 B.R. 481, 486 (Bankr. N.D. Ohio 2016); *In re Hubbard*, 529 B.R. 250, 255 (Bankr. E.D. Tenn. 2015).

**8. Summary Judgment Is Warranted Because the Debtor Cannot Prove the "Certainty of Hopelessness" Required to Establish the Second Brunner Factor**

To satisfy the second prong of the *Brunner* test – that her present inability to make any repayment is likely to persist – Sixth Circuit law requires the debtor to prove additional circumstances indicating a "certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Oyler*, 397 F.3d at 386 (quoting *In re Roberson*, 999 F.2d 1132, 1136

17

(7th Cir. 1993)).  To do so, "the debtor must precisely identify her problems and explain how her condition would impair her ability to work in the future."  *In re Tirch*, 409 F.3d 677, 681 (6th Cir. 2005).  Such additional circumstances "may include, but are not limited to, illness, disability, a lack of useable job skills, or the existence of a large number of dependents," but "[u]ltimately, the most important factor in satisfying the second prong is that the additional circumstances must be beyond the debtor's control, not borne of free choice."  *In re Barrett*, 487 F.3d 353, 359 (6th Cir. 2007) (citations and internal quotation marks omitted).

Here, although the Debtor's present financial situation is undeniably challenging, she cannot establish the requisite certainty of hopelessness.  The Debtor is young – only 38 years old – and still in the early stages of her working life.  She has admitted that she does not suffer from any physical or mental disability, illness or injury that would prevent her from working.  See NCSLT Interrogatories attached as Exhibit R at Pages 9 and 10, Interrogatory No. 15.  The Debtor herself rightfully remains hopeful that she will go back to work in the future.  *Id.* at Page 6, Interrogatory No. 6.

Moreover, the Debtor fails to offer competent evidence of the "additional circumstances" required to meet *Brunner*'s second prong.  Broadly construed, the Debtor's complaint and discovery responses touch on several possible arguments surrounding the physical and mental well-being of her dependent son impeding her ability to work.  She mentions that her son suffers from autism, receptive-expressive language delay, sensory processing difficulty, and constipation/gastrointestinal issues.  *Id.* at Pages 9 through 12, Interrogatory No. 15.  Although NCSLT is not unsympathetic to the Plaintiff's situation, the extent her son's conditions impede Plaintiff's ability to work in the future is at this point completely speculative, as are the associated future out of pocket costs to the Plaintiff.  Plaintiff herself has provided answers to

interrogatories that are not rooted in fact but speculation. Plaintiff has stated "It is impossible to know what treatments, or even issues that will come up." *Id.* at Page 12, Interrogatory No. 15, Section g. Plaintiff was also speculative about the cost any such treatments in the future: "For an example, I did speak with a lady at ACH about the genetic testing and she told me that some of the testing can cost thousands of dollars." *Id.* at Page 12, Interrogatory No. 15, section l. None of these arguments create a genuine issue of material fact requiring trial.

Plaintiff's reliance on the condition of her dependent son in an effort to establish "additional circumstances" do not suffice under *Brunner*. Debtor's likelihood to devote significant time and effort to childcare-related tasks while raising her 2-year-old son in the coming years, though laudable, is not recognized as an undue hardship, but a consequence of her own choices. *See In re Gesualdi*, 505 B.R. 330, 343-44 (Bankr. S.D. Fla. 2013) (rejecting argument that plaintiff's ability to work was limited by his status as primary caregiver for his son).

On this record, the Debtor simply cannot establish the additional circumstances necessary to prove the second prong of *Brunner*. *See In re Gibson*, 428 B.R. 385, 393 (Bankr. W.D. Mich. 2010) (rejecting undue hardship claim of single mother with four dependent children, explaining that "[i]t is perhaps ironic that Ms. Gibson's obvious strength and talent should work to her disadvantage in this litigation, but the law requires the court to find a certainty of hopelessness, a finding the court cannot make"). Accordingly, the Court should grant summary judgment in favor of the Defendant.

## D. CONCLUSION

For the foregoing reasons, NCSLT respectfully requests that the Court determine that the student loan debts of Jennifer Ellen Lewis are not dischargeable, as NCSLT has met its initial

burden to show that there are no material facts in dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 323. Furthermore, NCSLT satisfied the burden of proof that they hold an educational loan that was made under a program funded in part by a nonprofit institution, and Plaintiff cannot bring forth evidence to create a genuine issue of material fact regarding the second prong of the Brunner test. Therefore summary judgment should be entered in favor of NCSLT and this action should be dismissed with prejudice.

In the alternative, NCSLT requests that the court issue a partial summary judgment to narrow the issues for trial, or for further briefing, and find that NCSLT's student loans are loans under 11 U.S.C. § 523(a)(8)(A)(i) with balances of $59,335.89 and $59,141.83 respectively.

Respectfully submitted,

Dated: <u>August 6, 2021</u>

<u>/s/ Milos Gvozdenovic</u>
Milos Gvozdenovic, Esq. (0077969)
Weltman, Weinberg & Reis Co., L.P.A.
Attorney for Defendants
National Collegiate Student Loan Trust 2007-2
National Collegiate Student Loan Trust 2006-4
965 Keynote Circle
Brooklyn Heights, OH 44131
(216) 739-5647
(216) 739-5680 (fax)
mgvozdenovic@weltman.com

## CERTIFICATE OF SERVICE

I hereby certify that on, August 9, 2021, a true and correct copy of the Defendants National Collegiate Student Loan Trust 2007-2 and National Collegiate Student Loan Trust 2006-4's *Motion for Summary Judgment,* was filed electronically and was served;

Via the court's Electronic Case Filing System on the U.S. Trustee and these entities and individuals who are listed on the Court's Electronic Mail Notice List:

J. Robert Linneman, Esq., Attorney for Defendant, American Education Services, at jrl@santenhughes.com

Nicole L. Rohr-Metzger, Esq., Attorney for Plaintiff, Jennifer Ellen Lewis, at nicole@thrushandrohr.com

Rema Ina, Attorney for Defendant, Education Department at rema.ina@usdoj.gov

Steven J. Paffilas, Attorney for Defendant, Education Department at steven.paffilas@usdoj.gov

I further certify that, on August 9, 2021 or on the next business day thereafter, a copy of the foregoing Motion was served by regular U.S. mail, postage prepaid, to:

AES/Bank of America, Defendant, P.O. Box 2461, Harrisburg, PA 17102

Bank of America, Defendant, c/o CT Corporation System, 1300 E. 9th St., Ste. 1010, Cleveland, OH 44114

Education Department, Defendant

Jennifer Ellen Lewis, Plaintiff, 463 Lincoln Ave NW, Carrolton, OH 44615

JPMorgan Chase Bank, Defendant, c/o CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219

Johnson & Wales University, Defendant, 8 Abbott Park Place, Providence, RI 02886

Rhode Island Student Loan Authority, Defendant, 935 Jefferson Blvd. #3000, Warwick, RI 02886

Towd Point Master Funding Trust, Defendant, c/o CT Corporation System, 4400 Easton Commons Way, Ste. 125, Columbus, OH 43219

/s/ Milos Gvozdenovic
Milos Gvozdenovic, Esq. (0077969)
Weltman, Weinberg & Reis Co., L.P.A.
Attorney for Defendants
National Collegiate Student Loan Trust 2007-2
National Collegiate Student Loan Trust 2006-4