The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.



Russ Kendig
United States Bankruptcy Judge

Dated: 02:40 PM September 27, 2021

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| JENNIFER ELLEN LEWIS, | ) | CASE NO. 16-61478 |
| | ) | |
| Debtor. | ) | ADV. NO. 19-6059 |
| _____ | ) | |
| JENNIFER ELLEN LEWIS, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| JOHNSON & WALES | ) | **(NOT FOR PUBLICATION)** |
| UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Now before the court is Defendant United States Department of Education's ("Defendant") motion for summary judgment on Debtor-plaintiff's ("Debtor") 11 U.S.C. § 523(a)(8) claim. Defendant seeks a ruling that the student loan debt it is owed is not dischargeable in Plaintiff's chapter 13 bankruptcy case. Plaintiff opposes the motion.

The court has jurisdiction of this proceeding under 28 U.S.C. § 1334(b) and the general

1

order of reference entered by the United States District Court on April 4, 2012. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(I) and the parties have consented to final entries by this court. Pursuant to 11 U.S.C. § 1409, venue in this court is proper.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## STATEMENT OF FACTS

On July 19, 2016, Debtor filed a chapter 13 bankruptcy petition. At the time, she was approximately 34 years old and was an employed single mother of a fourteen year old daughter. (Def's M. Summ. Judg., Ex. 1, ECF No. 66; Sch. I, Main Case ECF No. 1.) They lived with her parents. (Ex. I, ECF No. 111.) She worked as an assistant manager for Burger King making approximately $32,000.00 per year and received $350.00 per month in child support for her daughter. (Sch. I, Main Case ECF No. 1.) Her monthly net income was slightly below $2,200.00 and her monthly expenses totaled $2,030.00, leaving $163.00 per month in disposable income. (Id.) Debtor's plan payment was reduced to $100.00 when she became pregnant and stopped working. (Mod. of Ch. 13 Plan, Main Case ECF No. 22.)

Debtor is now married and has a toddler son with autism and various developmental delays. (Def's M. Summ. Judg., Ex. 1, ECF No. 66; Debtor's Ex. I, ECF No. 111.) She lives with her husband, daughter, and son. (Def's M. Summ. Judg., Ex. 1, ECF No. 66.) She is a stay-at-home mom. (Id.) She no longer receives child support because her daughter is over 18. (Id.) Her husband reportedly earns $50,000.00 per year. (Am. Comp., ¶ 29, ECF No. 34.) She did not provide documentation of her husband's income. In response to an interrogatory, she itemized monthly household expenses of $2,665.00 as of March 2020. (Def.'s M. Summ. Judg., Ex. 1, ECF No. 66.)

Debtor was last employed in 2017 but intends to return to work in the future. (Debtor's Ex. I, ECF No. 111.) She provided a hypothetical estimation of their disposable income if their combined household income was $90,000.00, deducting IRS standards as a basis for several expenses. (Memo in Opp., pp. 4-5, ECF No. 71.) She asserts that she will lose the medical card for herself and her son if she returns to work and estimates insurance will cost roughly $500.00 per month. (Debtor's Ex. I, ECF No. 111.) Based on these figures, she calculated disposable income of $572.00 per month. (Id.)

Debtor's schedules reveal multiple student loans, totaling over $200,000.00. (Sch. E/F, ECF No. 1.) Between 2006-2011, Debtor attended several post-secondary institutions, earning an associate and bachelor's degrees in business management. (Def's M. Summ. Judg., Ex. 1, ECF No. 66.) After graduating, she was also licensed by the Ohio Department of Insurance for Resident Major Lines and Lines of Authority: Accident and Health, Life. These licenses are expired. (Id.)

Defendant filed three claims totaling approximately $78,000.00. (Claims Register, ECF Claims 1-1, 2-1, 6-2.) It is owed at least $93,000.00. (Am. Compl., ¶ 10, ECF No. 34.) To pay

2

the loans in full in ten years, payments to Defendant would be $964.00 per month. (Id., Ex. A, ECF No. 109.) Debtor does not know if she made any payments to Defendant. (Def's M. Summ. Judg., Ex. 1, ECF No. 66) She did pay on her private loans, admittedly in part to protect her father, a cosigner. (Id.) In 2015, she began a loan consolidation process with Direct Loan Services, a private company, but cancelled after three payments. (Debtor's Support Document, ECF No. 109.) As of June 27, 2016, a credit report shows the loans were deferred. (Memo. in Opp., Ex. G, ECF No. 109.)

## **DISCUSSION**

Defendant brings its motion under Federal Bankruptcy Rule 7056, which incorporates Federal Civil Rule 56 into bankruptcy practice. A court is instructed to award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(a). The moving party bears the initial burden of proof as to the non-existence of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If met, the burden shifts to the non-moving party to demonstrate there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

A fact is "material" only if its resolution will affect the outcome of the proceeding. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). All reasonable inferences are viewed in favor of the non-movant. Moran v. Al Basit LLC, 788 F.3d 201, 204 (6th Cir. 2015) (citation omitted). At the summary judgment stage, a court cannot make credibility determinations or weigh the evidence. Norfolk Southern Ry. Co. v. Allied Erecting & Dismantling Co., Inc., 775 Fed.Appx. 178, 186 (6th Cir. 2019) (citation omitted). But "if the evidence is merely colorable, Dombrowski v. Eastland, 387 U.S. 82, 87 (1967) (per curiam ), or is not significantly probative, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968), summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

To discharge a student loan, the loan must "impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The Sixth Circuit uses the Brunner test to assess whether undue hardship exists. Oyler v. Educ. Credit Mgmt. Corp., 397 F.3d 382, 385 (6th Cir.2005) (citing Brunner v. New York State Higher Educ. Serv. Corp., 831 F.2d 395 (2d Cir.1987)). To succeed, Debtor must prove, by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Barrett v. Educational Credit Management Corporation (In re Barrett), 487 F.3d 353, 359 (6th Cir. 2007) (citation omitted) (quoting Brunner at 396).

3

I. **Debtor can maintain a minimal standard of living.**

Defendant argues Debtor cannot prove that she is unable to maintain a minimal standard of living and therefore fails to satisfy the first prong of the Brunner test. Defendant points out that Debtor is in a chapter 13 reorganization case, not a chapter 7 liquidation case. Her household income and expenses show disposable income which is currently paid into the plan. Post-discharge, Defendant suggests this money is available for student loan repayment. At first glance, this argument seems absurd because Debtor owes Defendant more than $93,000.00 and her chapter 13 plan payment was $100.00 per month but Debtor's circumstances have changed since her bankruptcy filing and the first prong of the Brunner test requires review of the current situation. In re Roberson, 999 F.2d 1132, 1135 (7th Cir. 1993). Debtor spent much of her discussion focused on a hypothetical future.

A minimal standard of living is one that allows a debtor to meet the daily needs of subsistence, including shelter, utilities, food, clothing, and transportation. Murrell v. Edsouth (In re Murrell), 605 B.R. 464, 469 (Bankr. N.D. Ohio 2019) (citations omitted). While neither tight finances, nor the need to reduce expenses, means a debtor is unable to maintain a minimal standard of living, a debtor is not expected to live in poverty. Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby), 144 F.3d 433, 437 (6th Cir. 1998) (citation omitted). Considerations under the first prong of the Brunner test include a debtor's expenses, standard of living, and the amount of debt. Oyler, 397 F.3d 382, 385 (citation omitted).

Debtor represents that her husband earns $50,000.00 per year, a figure accepted by Defendant. (Def.'s M. Summ. Judg. ¶ 10, ECF No. 66) It is not clear whether this figure is gross income or net income. Defendant treats it as net. Construing it in Debtor's favor, as the court is required to do on a motion for summary judgment, the court will view it as a gross figure.[1] Since it is gross, the court will reduce it to a net figure in order to ascertain Debtor's standard of living.

In presenting hypothetical figures regarding household income and expenses if she were to return to work, Debtor used a 19% figure for payroll deductions (save medical insurance). The court will use this figure, which seems plausible considering a 6.2% social security deduction, a 1.45% Medicare deduction, and a 12% income tax deduction. After taking this deduction, her husband's net income is $40,500.00 annually, or $3,375.00 per month.

Debtor itemized expenses totaling $2,666.00 per month as of March 2020. These expenses are not unreasonable. However, there are two issues with the itemization. First, it does not include clothing and vehicle operational expenses, both identified as part of subsistence. Second, it does include $450.00 for a car loan that should now be paid in full.[2] Since this is a motion for summary judgment, the court will generously give Debtor the benefit of the car payment as sufficient to cover the omitted expenses. Deducting $2,666.00 from Debtor's

---

[1] His hourly wage is $18.14, which is roughly $37,000.00 gross per year based on a 40 hour work week. He is eligible for bonuses. Thus, other facts support using $50,000.00 as a gross figure.

[2] Debtor's chapter 13 plan, filed in July 2016, indicates she owed $26,967.00 for a 2012 Nissan Murano. If payments were timely made, this is no longer an expense.

household income results in a $709.00 per month surplus, at a minimum.

Debtor represents that the current monthly payment on her student loan is $964.00. Additionally, she has two other student loans that would require payments of approximately $1,700.00 a month. Contractually, Debtor estimates her payments would be over $2,500.00 per month. As Defendant points out, these figures do not consider income-based repayment plans which could substantially reduce her payments.

At present, Debtor could not pay the loans in full and maintain a minimal standard of living. However, Debtor could make some payment on her student loans without being forced to live in poverty. *See* Tirch v. Pennsylvania Higher Educ. Assistance Agency (In re Tirch), 409 F.3d 677, 681 (6th Cir. 2005) (approving partial discharge). While Debtor's household income is below median, she is able to subsist on her husband's income with a surplus. The court declines to enter a full discharge of Debtor's indebtedness to Defendant.

## II. Debtor's circumstances do not demonstrate that her state of affairs is likely to persist throughout the repayment period.

Even if Debtor had convinced the court she could not maintain a minimal standard of living and repay some portion of her student loans, the court cannot find her situation is persistent as required by the second Brunner criterion. Debtor must show that the inability to maintain a minimal standard of living is likely to persist for a significant portion of the repayment period. "The debtor must precisely identify her problems and explain how her condition would impair her ability to work in the future." Tirch, 409 F.3d 677, 681 (6th Cir. 2005) (citations omitted). "Illness, disability, a lack of useable job skills, or the existence of a large number of dependents" may show persistence of a hopeless financial situation. Oyler, 397 F.3d at 386 (citations omitted). Simply being unable to make payments in the present is insufficient, a certainty of hopelessness must exist. Tirch, 409 F.3d at 681 (citing Oyler, 397 F.3d at 386) (other citation omitted).

Primarily, Debtor contends that her son's needs from his medical conditions impact her earning potential for a significant portion of the repayment period. Although she references her own medical issues in her affidavit, she identified no medical conditions in response to Defendant's interrogatory on this issue and did not offer any explanation of how these conditions affect her ability to work. (Def's M. Summ. Judg., Ex. 1, ECF No. 66.)

Debtor's son is diagnosed with "autism spectrum disorder (ASD), receptive-expressive language delay, fine motor delay and sensory processing difficulties." (Debtor's Support Document, Ex. B, ECF No. 109.) While these conditions will persist throughout the repayment period, there is no certainty that guarantees the hopelessness necessary to satisfy Brunner. In fact, Debtor's own arguments are contrary. "Given the hectic schedule of her son until he obtains school age, the Debtor will have a hard time finding employment within the hours of his appointments and preschool or would incur a hefty cost to pay someone to take him to his appointments." (Memo. in Opp., p. 8, ECF No. 71.) Debtor's son is three. In two years, he will be of school age, alleviating some of the stress on Debtor's schedule. Since she has ten years of

repayment remaining, the eight years that remain once her son reaches school age constitute a significant portion of the repayment period, not the two years until he reaches school age.

Debtor has clearly stated an intention to return to work but presents multiple reasons why it will not improve her family's financial situation, mentioning the limited opportunities and lower earnings because she lives in a rural setting; a perceived difficulty obtaining work because of the gap in employment, and her history of work in low to modest paying jobs. (See id.) She also cites an article discussing the decreased income and increased costs families with autistic children incur over similarly situated families. (Debtor's Support Document, Ex. C, ECF No. 1090.) Additionally, she identifies new expenses from returning to work including day care, increased transportation, and insurance coverage to replace the medical card for she and her son.

To substantiate her position, she provided a hypothetical household budget were she to earn $40,000.00 annually. After deducting expenses, she posits her net disposable income would be $572.00, which she would need for unforeseen, unitemized expenses, a replacement vehicle, etc. The court cannot accept that the numbers provided are reasonable.

Under the hypothetical budget, Debtor's expenses increase from $2,666.00 per month to $6,928.00 per month, in part because she uses the IRS standards for expenses. When compared to many of the actual expenses in her current budget, the numbers are seriously inflated. For example, the IRS standard for food, clothing, etc. is $1,433.00. Debtor's current budget for these items totals $755.00. The IRS standard for utilities is $660.00 while Debtor's itemization for water, sewer, trash, heat, and electricity is $353.00. The IRS standard for housing is $846.00, Debtor's mortgage is $639.00. The expense deductions used by Debtor are not tied to the reality of her financial situation.

Moreover, Debtor claims that the $572.00 figure would need to cover the cost of a replacement vehicle. However, the hypothetical budget includes the $450.00 car payment previously discussed. Further, Debtor includes an $850.00 day care expense, yet has also stated that she may work part-time, in the evenings, or work from home. (Debtor's Ex. I, ECF 111.)

Undeniably, Debtor faces sobering challenges raising her autistic son. The problem for the court is that Debtor's current budget shows she can maintain a minimal standard of living and her hypothetical budget is too fictional to consider a reasonable hypothesis of the future. Debtor intends to return to work, which will increase her household income. The court concludes her current financial situation is likely to either endure or improve, not deteriorate, for the remainder of the repayment term. Debtor has not met her burden of proof on prong two of the Brunner test.

### III. Debtor made a good faith effort to repay her student loans.

Debtor must establish that she made a good faith effort to repay her student loans. She points to her numerous forbearances and deferments, her payments on other student loans, a consolidation she thought included the federal loans, and her attempt to reduce expenses by living with her parents as indicia of her good faith. Defendant counters by pointing out that Debtor's discretionary expenses in August 2015 accounted for 22% of her total expenditures that

6

19-06059-rk    Doc 112    FILED 09/27/21    ENTERED 09/27/21 14:56:02    Page 6 of 8

month, $488, which could be applied toward a student loan payment. (Def.'s M. Summ. Judg., ECF No. 66.)

When examining this prong, a court must determine whether a debtor reasonably and responsibly addressed the student loan debt based on his or her individual circumstances before petitioning the court for an undue hardship discharge. See, e.g., Lamento v. U.S. Dep't of Educ. (In re Lamento), 520 B.R. 667, 678 (Bankr. N.D. Ohio 2014) (citation omitted); Grant v. U.S. Dep't of Educ. (In re Grant), 398 B.R. 205, 213 (Bankr. N.D. Ohio 2008) (citation omitted). A debtor cannot ignore the debt, or act fecklessly, and expect a discharge. Various factors are used to assess a debtor's good faith, "including the debtor's repayment history and her efforts to obtain employment, maximize income, minimize expenses, and participate in alternative repayment programs, though no single factor is dispositive." Trudel v. U.S. Dep't of Educ. (In re Trudel), 514 B.R. 219 (B.A.P. 6th Cir. 2014) (citations omitted).

Although there is no proof that Debtor made any payments to Defendant, "good faith does not solely depend on attempts at repayment." Hertzel v. Educational Credit Mgmt. Corp. (In re Hertzel), 339 B.R. 221, 233 (B.A.P. 6th Cir. 2005) (citation omitted). When the loans were in forbearance or deferred, no payments were due. And Debtor did consistently pay on other student loans. The court is troubled that Debtor prioritized payment of certain private loans to protect her father as cosigner, limiting efforts of repayment on Defendant's loans. But the sum total of these facts does not suggest Debtor acted in bad faith.

Moreover, at the time Debtor filed bankruptcy, she was working at a $30,000 per year job and living with her parents, purportedly to reduce expenses and pay on her loans. She stopped working during her pregnancy and has not returned to work because of the special needs and schedule of her young son. She does intend to resume working in the future.

Relying on a bank statement from August 2015, Defendant argues that Debtor could tighten her belt and free up money to pay toward her student loan. The court finds a single month's bank statement from six years ago is not probative of Debtor's current lifestyle. The court discussed Debtor's expenses in detail in sections I and II. Although it did find room for at least partial repayment, there is no indication that Debtor is living lavishly or her expenses are so unreasonable as to defy good faith. Debtor has met her burden regarding the good faith prong of Brunner.

## **CONCLUSION**

Student loans are not dischargeable in a bankruptcy case unless a debtor can demonstrate repayment imposes an undue hardship on the debtor or debtor's dependents. Debtor failed to make such a showing. Her current budget shows an ability to meet her daily needs of subsistence and make some payment toward her student loans. Considering her intention to return to work in the future, her situation will not worsen during the balance of the repayment period. While she has demonstrated good faith in addressing the amount owed Defendant, she failed to establish all the elements of undue hardship.

The court will grant Defendant's motion for summary judgment, in part, finding that Defendant is entitled to a judgment that a portion of the debt is nondischargeable. The motion is denied to the extent it seeks nondischargeability of the entire debt. A separate order will be entered contemporaneously with this opinion.

# # #

**Service List:**

Nicole L. Rohr-Metzger
Thrush & Rohr LLC
4930 Hills & Dales Rd NW
Canton, OH 44708

Rema Ina
United States Attorney's Office, NDOH
801 West Superior Avenue Suite 400
Cleveland, OH 44113

Steven J. Paffilas
Office of the United States Attorney
Carl B. Stokes United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, OH 44113